IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER MICHAEL FISHER                                              PLAINTIFF

v.                              Civil No. 04-5126

SHERIFF KEITH FERGUSON
and NURSE SUE MCDONALD                                                  DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Christopher Michael Fisher, currently an inmate of the Arkansas Department of Correction, brings this pro se civil rights action under 42 U.S.C. § 1983. Fisher contends that his civil rights were violated while he was detained at the Benton County Detention Center.

On June 2, 2005, the defendants filed a summary judgment motion (Docs. 18-20), as directed by the court (Doc. 15). By order entered on June 28, 2005, Fisher was directed to complete, sign, date, and return an attached questionnaire that would serve as his response to the defendants' motion for summary judgment. (Doc. 21.) On July 22, 2005, Fisher's response to the defendants' summary judgment motion was filed. (Doc. 22.) The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

**I. Background**

Fisher is suing Nurse Sue McDonald and Sheriff Keith Ferguson in their official and individual capacities for placing him in unconstitutional conditions of confinement which led to his contracting a disease. (Doc. 1; Doc. 22 at ¶ 5.)

On September 15, 2003, Fisher was arrested on firearm and drug charges. (Doc. 22 at ¶ 1.) He was housed at the Benton County Detention Center (BCDC) from September 16, 2003

until his transport to the Arkansas Department of Correction (ADC) on March 18, 2004. (Doc. 22 at ¶ 2.) After being detained at the BCDC for approximately two weeks, he was given a tuberculosis (TB) skin test. This test was negative for exposure to tuberculosis. (Doc. 22 at ¶¶ 3-4.) After he arrived at the ADC Diagnostic Unit, he was given another tuberculosis skin test which gave a positive result, indicating that Fisher had been exposed to tuberculosis. (Doc. 8 at ¶¶ 2-3.) Fisher was placed on I.N.H. (presumably Isoniazid) medication to be taken twice weekly for nine to twelve months. (Doc. 8 at ¶ 8.) As he was detained exclusively at the BCDC from the time of his first skin test, which was negative, until his transfer to the ADC where he received a positive result, Fisher contends that he must have come in contact with the tuberculosis germ while detained at the BCDC.

Fisher contends that Nurse McDonald told inmates whose tuberculosis skin test had a positive reaction that those inmates "needed to see a doctor when they got out" of BCDC. (Doc. 8 at ¶ 8; Doc. 22 at ¶ 14-15, 22.) Plaintiff does not give the names of any of these inmates. Fisher claims that because Nurse McDonald was negligent in failing to test inmates immediately upon entry in the BCDC and in allowing inmates who had received a positive tuberculosis skin test to remain in general population, she exposed others to inmates who potentially had tuberculosis. (Doc. 1; Doc. 8 at ¶¶ 4-5; Doc. 22 at ¶¶ 6-7, 9-10, 14-15, 22.) Also, Fisher alleges that Sheriff Ferguson should have order the instillation of "TB lights," or ultraviolet lights, which could have prevented the spread of tuberculosis. (Doc. 1; Doc. 8 at ¶ 6; Doc. 22 at ¶¶ 16-20.)

Within two weeks of an inmates arrival at the BCDC, that inmate is given a skin test for tuberculosis. (Doc. 22 at ¶ 10.) If an inmate tests positive for the tuberculosis germ, then the BCDC contacts the Benton County Health Department and that inmate is scheduled for an x-ray.

-2-

(Doc. 20 at ¶ 7; Doc. 22 at ¶ 11.) A doctor at the Benton County Health Department reads the x-ray to determine if the inmate has the tuberculosis germ or has tuberculosis disease. (Doc. 20 at ¶ 8; Doc. 22 at ¶ 12.) If the doctor determines that the inmate only has the tuberculosis germ, the inmate is prescribed I.N.H. medication and vitamin B6, and, as that inmate is not at risk of spreading the disease, he is housed in general population. (Doc. 20 at ¶ 9.) Nurse McDonald contends that she is not aware of the BCDC ever housing any detainee who had "full blown tuberculosis disease." (Doc. 20 at Ex. 2.)

At the time Fisher was detained at the BCDC, there were no "TB lights" in use. (Doc. 20 at ¶ 11; Doc. 22 at ¶ 16.) Currently, there are "TB lights" installed and in use in the intake area, the booking area, and at the nurse's station; there are no "TB lights" in any of the inmate pods. (Doc. 20 at ¶¶ 12-13.) The BCDC has conducted a cost-benefit analysis regarding the installation of "TB lights" and concluded that the installation and maintenance is neither a cost effective or a necessary expenditure. The cost of installing the "TB lights" throughout the facility is estimated to be between $50,000 and $100,000, with an annual maintenance cost of $10,000 to $15,000. (Doc. 20 at ¶ 14.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts,

AO72A
(Rev. 8/82)

by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

Fisher is alleging that he was subjected to unconstitutional conditions of confinement which caused him to contract the tuberculosis germ. These conditions are that (1) detainees were permitted to be housed in general population for up to two weeks before a tuberculosis skin test was performed, (2) detainees who returned a positive reactor to the skin test were allowed to remain in general population with only instructions given by Nurse McDonald that the inmate

contact a doctor upon release, and (3) the BCDC failed to install "TB lights" which would have prevented the spread of tuberculosis.

To establish that the conditions of confinement in the BCDC violated the Eighth Amendment, Fisher must show first, that the alleged deprivation was "'objectively, sufficiently serious'" resulting "'in the denial of the minimal civilized measure of life's necessities,'" and second, that Nurse McDonald and Sheriff Ferguson were deliberately indifferent to "'an excessive risk to inmate health or safety'" in that they actually knew of and disregarded the risk. *See Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)); *see also Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005) (noting pretrial detainee's claims analyzed under Fourteenth Amendment using Eighth Amendment's deliberate indifference standard). Defendants' actions did not establish unconstitutional conditions of confinement.

New arrivals were tested for tuberculosis within two weeks of their arrival at the BCDC. There is no evidence that the jail's policy of allowing inmates who had not received testing to be housed in general population resulted in an outbreak of tuberculosis. Nor does Fisher prove that such a policy is what caused him to contract the tuberculosis germ. The BCDC has a policy in place that results in the testing of every inmate within two weeks of their arrival at the detention center. Further, Fisher has presented no evidence that jail officials ever knowingly placed an inmate who had an active case of tuberculosis in with the general population until the test could be performed.

Fisher's contention that Nurse McDonald told inmates who tested positive for exposure to the tuberculosis germ to seek a physician's advice but did not remove that inmate from general

-5-

population also does not prove a conditions-of-confinement violation. First, while Fisher contends that he overheard such conversations, he does not provide the names of any specific inmates who received this advice. Second, Fisher does not seem to understand the difference between the inmates who returned a positive reactor, indicating that they are carriers only of the tuberculosis germ, and those who are suffering from active tuberculosis, which are the only people who can transmit the disease.[1] Finally, Fisher does not contend that McDonald or any other jail official knowingly allowed an inmate who was afflicted with an active case of tuberculosis to remain in general population, which is the only way that Fisher could have contracted the tuberculosis germ and later return a positive reaction to the skin test.

Finally, Fisher has not proven that Sheriff Ferguson's decision not to install "TB lights" after considering a cost-benefit analysis is a constitutional violation. According to the defendants, this issue has been addressed, and the decision was made that the cost of installing and maintaining the "TB lights" exceeds the benefits of the installation. As noted earlier, there has been no evidence of a tuberculosis outbreak or any problems other than the one presented here by the plaintiff. Thus, the decision to not install the lights and to continue with the policy in place is not objectively unreasonable.

---

[1] "Exposure to an individual with an active case of tuberculosis may result in the production of antibodies which would produce a positive skin test in the tested individual. If the skin of the tested individual exhibits a certain degree of reaction, a chest x-ray is recommended to determine if there is evidence of tuberculosis symptoms. The separation of other inmates from the tested individual is only necessary if the individual has objective symptoms of tuberculosis in addition to the skin test. In addition, mere exposure to an individual who has a positive skin test does not require the person to be tested for the disease. An individual suffering from an active case of tuberculosis would have the symptoms of an abnormal chest x-ray, coughing up blood, losing weight, running fever, and experiencing night sweats.

"If an individual formerly tested negative and then receives a positive skin test result, it is an indication that he has been exposed to a person with active tuberculosis. A positive skin test result does not mean that the person will exhibit symptoms of tuberculosis in the future. It cannot be determined whether the tested individual had been exposed to tuberculosis **a month or six months before showing a positive skin test**." *Gibbs. v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) (emphasis added).

AO72A
(Rev. 8/82)

At most, the plaintiff has raised a claim that the defendants were negligent in the policies and procedures concerning inmates who have tested positive for the tuberculosis germ. However, a claim of negligence is insufficient to state a constitutional violation. *See Ervin v. Busby*, 992 F.2d 147, 151 (8th Cir.) (per curiam) (jail officials' negligence did not support § 1983 claim), *cert. denied*, 510 U.S. 879 (1993). Simply put, Fisher has not produced any evidence to show that the policies in place to detect and treat those who have tuberculosis are ineffective or that the defendants knew of a serious risk of the transmission of tuberculosis and disregarded that risk. *See Selvey v. City of St. Louis*, Nos. 95-3041 & 95-3045, 83 F.3d 425 (8th Cir. 1996) (unpublished per curiam); *Cermak v. Groose*, No. 94-3984, 61 F.3d 908 (8th Cir. 1995) (unpublished per curiam).

### IV. Conclusion

I therefore recommend that the defendants' motion (Doc. 18) for summary judgment be granted and this action be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of November 2005.

                                                  **/s/ Beverly Stites Jones**
                                            _____
                                            HON. BEVERLY STITES JONES
                                            UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)